UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | |
| | * | |
| ROBERT A. LIBERATORE, | * | Criminal Action No. 16-cr-10211-ADB |
| MARK S. GIRARDIN, | * | |
| JOSEPH EVANGELISTA, | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM AND ORDER
## DENYING MOTIONS TO SEVER

BURROUGHS, D.J.

Defendants Evangelista, Girardin, and Liberatore were indicted for an alleged conspiracy to transport stolen razor blades in interstate commerce. Additionally, Girardin and Liberatore were indicted for interstate transportation of stolen razor blades and filing false tax returns. Currently pending before the Court are two motions to sever. For the reasons set forth below, the motions to sever are denied.

**I.   BACKGROUND**

The following facts are drawn from the indictment [ECF No. 27].

The indictment alleges that Defendant Evangelista, while working for Gillette, stole razor blades from his employer and delivered them to Defendants Girardin and Liberatore. Girardin and Liberatore then allegedly sold the razor blades online through a business entity known as "Cambridge Dedicated Services." They sold the razor blades to customers outside of Massachusetts, received payment via PayPal, and then used the United States Postal Service to ship the razor blades to the out-of-state customers.

Girardin and Liberatore allegedly sold a total of $208,944.10 worth of stolen razor blades to customers outside of Massachusetts. Cambridge Dedicated Services also sold other items through eBay, in addition to the Gillette razor blades, generating gross receipts of approximately $725,000 in 2010, and approximately $369,000 in 2011.

In addition to the charges related to the transportation of stolen razor blades, the indictment claims that Girardin and Liberatore each filed individual tax returns in 2010 and 2011 which did not include any information about Cambridge Dedicated Services. Girardin and Liberatore were required to report to the IRS any profit or loss from each of their businesses, including their share of Cambridge Dedicated Services' gross receipts.

On April 12, 2017, Girardin filed a motion to sever the charges involving transporting stolen razor blades from the charges concerning false tax filings [ECF No. 56], which Liberatore joined [ECF No. 59]. On April 18, 2017, Evangelista filed a motion to sever his trial from that of Girardin and Liberatore. [ECF No. 60]. The Government opposes both motions. [ECF Nos. 63, 64].

## II. DISCUSSION

### A. Girardin's and Liberatore's Motion to Sever Tax Charges

Girardin and Liberatore argue that the charges concerning allegedly false tax returns were not properly joined with the charges concerning transporting stolen razor blades, and thus the tax-related charges must be severed. Joinder of offenses is governed by Fed. R. Crim. P. 8(a), which provides:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or

both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Id. "Rule 8(a)'s joinder provision is generously construed in favor of joinder," United States v. Randazzo, 80 F.3d 623, 627 (1st Cir. 1996), and "obvious considerations of judicial economy support trying all related counts against the same defendant at one time," United States v. Alosa, 14 F.3d 693, 695 (1st Cir. 1994). Rule 8(a) permits joinder of multiple offenses in one of three situations; if the offenses are (1) "of the same or similar character," (2) "based on the same act or transaction," or (3) "connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a); see also Randazzo, 80 F.3d at 627.

The Government argues that joinder in this case properly falls within the third category, a "common scheme or plan." Girardin and Liberatore claim that the razor blade offenses and the tax offenses are not part of a "common scheme or plan" because they do not share common victims, accomplices, a common purpose, or a similar *modus operandi*.[1] As the Government correctly points out, however, the alleged failure to report income from Cambridge Dedicated Services included income from the sale of stolen razor blades, and filing false tax returns could have helped the defendants to conceal the razor blade scheme. These types of offenses are frequently joined. See Randazzo, 80 F.3d at 627 (explaining that the "'common scheme or plan' . . . rubric is often used to join false statement claims with tax fraud charges where the tax fraud involves failure to report specific income obtained by the false statements . . . [i]ndeed, the failure to report may help conceal the fraud"); United States v. Yefsky, 994 F.2d 885, 895 (1st

---

[1] Girardin and Liberatore cite United States v. Santos Batista, 239 F.3d 16, 21 (1st Cir. 2001) for the proposition that "[f]or two or more offenses to constitute part of a common scheme or plan, they must be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar *modus operandi*." This portion of Santos Batista addressed sentencing, however, and quotes the Federal Sentencing Guidelines. Accordingly, the case is not directly applicable to joinder under Rule 8(a).

3

Cir. 1993) (holding "[t]here can be no doubt" that tax fraud counts were properly joined with mail fraud counts "because some of the unreported income was the fruit of the mail fraud scheme"); United States v. DeLeon, No. 07-CR-10277-NMG, 2008 WL 4610292, at *1–2 (D. Mass. Oct. 16, 2008) (denying motion to sever conspiracy and false statement counts from tax fraud and mail fraud counts); United States v. George, No. 03-CR-10091-PBS, 2004 WL 746282, at *2 (D. Mass. Apr. 6, 2004) (holding that joinder of counts alleging tax fraud and use of false social security number to open bank accounts was "proper under the 'common scheme or plan' prong of 8(a) because one of the 'illegal activit[ies] provide[d] the impetus for the other illegal activity'" (quoting United States v. Dominguez, 226 F.3d 1235, 1239 (11th Cir. 2000))).

Girardin and Liberatore rely on Randazzo, a case in which a shrimp processing company and its president were charged with 97 counts relating to selling adulterated shrimp, and the president was additionally charged with four counts of filing false tax returns. Randazzo, 80 F.3d at 626. The shrimp counts alleged that the company used prohibited substances to alter the weight or color of shrimp, thereby increasing profits, while the tax counts charged that the president misreported cash that he took from the company for personal use, and that the company misreported one employee's wages. Id. The court explained that the shrimp counts and the tax counts were not related, and that it was "pure happenstance whether the overstated expenses happened to reduce legal income or illegal income" of the company, so "[t]he misconduct underlying the shrimp counts and the improper claiming of expenses on the returns were not part of the same 'scheme or plan' in any sense of the phrase." Id. at 627.

The facts of this case are distinct from Randazzo. Here, the Government argues that some of the income that the defendants failed to report on their tax returns was derived from the razor blade sales. As noted above, filing false tax returns arguably assisted the defendants in

4

concealing the razor blade crimes. Moreover, even if the razor blade charges were severed from the tax charges, evidence that the defendants misreported income from Cambridge Dedicated Services would be admissible at a trial on the razor charges as proof of knowledge that the razors were stolen, and likewise, evidence that the razors were stolen would be admissible at trial on the tax charges as proof of the knowing and willful omission of the razor blade income on the tax returns. This is distinguishable from Randazzo, where the shrimp adulteration was completely unrelated to the misreported tax returns. Accordingly, because the razor blade charges are sufficiently connected to the tax charges as part of a common plan or scheme, joinder is proper.

Next, Girardin claims that the tax return he filed in 2014 cannot be part of the common scheme or plan, because it was filed nearly three years after the razor blade scheme allegedly took place, and thus is too removed in time from the rest of the charged conduct. Girardin fails to mention, however, that the return in question was for the 2011 tax year,[2] the year in which the razor blade scheme is alleged to have occurred. Therefore, Girardin's 2011 tax return is sufficiently connected with the rest of the conduct charged to be considered part of the common plan or scheme.[3]

Finally, Girardin and Liberatore argue that the Court should sever the charges pursuant to Fed. R. Crim. P. 14(a), which provides that, "[i]f the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide

---

[2] It is not clear from the indictment or the pleadings why Girardin did not file a 2011 return until 2014, but in the context of this case, the date of filing does not appear relevant to the issue of whether the 2011 return is connected to the 2011 razor blade scheme.

[3] Girardin and Liberatore also argue that their 2010 tax returns are not relevant because the razor blade charges concern a scheme that allegedly began in 2011. Since this argument concerns the admissibility of evidence, the Court need not address it here, but defendants are free to renew this objection in a motion in limine or at trial.

any other relief that justice requires." Almost every trial in which a defendant is tried on more than one offense will result in some prejudice. United States v. Richardson, 515 F.3d 74, 81 (1st Cir. 2008) (citing United States v. Burgos, 254 F.3d 8, 13–14 (1st Cir. 2001)). "Garden variety prejudice, however, will not, in and of itself, warrant severance." Id. There are three types of prejudice that may result from trying a defendant on multiple offenses in the same trial:

> (1) the defendant may become embarrassed or confounded in presenting separate defenses; (2) proof that defendant is guilty of one offense may be used to convict him of a second offense, even though such proof would be [inadmissible] in a second trial for the second offense; and (3) a defendant may wish to testify in his own behalf on one of the offenses but not another, forcing him to choose the unwanted alternative of testifying as to both or testifying as to neither.

Id. (quoting United States v. Jordan, 112 F.3d 14, 16 (1st Cir. 1997)).

Girardin and Liberatore argue that all three types of prejudice exist in this case. As for the first category, however, the defendants do not explain how presenting separate defenses would cause embarrassment or confusion, aside from generally asserting that this would be true, nor is it apparent to the Court how this type of prejudice could exist here. Concerning the second category, Girardin and Liberatore first argue that the razor blade and tax offenses are so different that the admissible evidence relating to each charge would diverge significantly. As discussed above, however, the Court disagrees with this assessment of the case, since the razor blade charges are connected to the tax charges as part of a single scheme. The defendants also claim that, if the jury decides that the defendants had the requisite scienter to commit one of the offenses, the jury might assume that they had the necessary scienter for the other offenses as well. To the extent that this risk exists, it is present in every case in which multiple charges are tried at once, and there is nothing to suggest that the risk is higher than ordinary in this case or that it cannot be ameliorated by appropriate limiting instructions to the jury. See United States v. Baltas, 236 F.3d 27, 34 (1st Cir. 2001) ("[t]here is always some prejudice in any trial where more

than one offense or offender are tried together," but "spillover prejudice" can be prevented with appropriate jury instructions (quotation omitted)).

As to the third type of prejudice, Girardin and Liberatore again assert that the evidence related to the razor blade charges is likely to be different from the evidence pertaining to the tax charges, which could impact a defendant's decision to testify concerning each set of charges. "[A] defendant may deserve a severance of counts where [he] makes a convincing showing that he has both important testimony to give concerning one count and strong need to refrain from testifying on the other." United States v. Melendez, 301 F.3d 27, 36 (1st Cir. 2002) (quoting Alosa, 14 F.3d at 695). To make this showing, "the defendant must offer 'enough information to allow the court to weigh the needs of judicial economy versus the defendant's freedom to choose whether to testify as to a particular charge.'" Id. (quoting Jordan, 112 F.3d at 17). Here, the defendants have not offered any information or reasoning aside from their general assertion that the charges are so different that they should be severed, along with citing the same risk of garden-variety prejudice that exists in every case where multiple offenses or defendants are tried together. Indeed, they have not claimed an intent to testify or identified which counts they would want to testify about. Accordingly, Girardin and Liberatore have not met their burden of showing that they would be prejudiced in their right to testify if the counts were not severed.

**B.     Evangelista's Motion to Sever His Trial**

Defendant Evangelista argues that his trial should be severed from that of Girardin and Liberatore due to allegedly incriminating statements made by Liberatore, and also because he

claims that his defense is likely to be antagonistic to that offered by Girardin and Liberatore, and vice versa. Evangelista seeks severance pursuant to Fed. R. Crim. P. 14(a).

First, Evangelista claims that two statements made by Liberatore mandate severance. In an interview with investigators, Liberatore referenced an unnamed person as "the razor guy," and Evangelista claims the government will seek to identify him as this person. At another point in the interview, Liberatore asked what potential criminal charges could be brought against him, and the interviewer suggested mail fraud and wire fraud. Liberatore responded, "It is what it is. We have had a good run."

The Confrontation Clause of the Sixth Amendment includes the right to cross-examine witnesses, so "where two defendants are tried jointly, the pretrial confession of one cannot be admitted against the other unless the confessing defendant takes the stand." Richardson v. Marsh, 481 U.S. 200, 206 (1987). "Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant. This accords with the almost invariable assumption of the law that jurors follow their instructions . . . ." Id. A "narrow exception to this principle" exists where the statement in question is "powerfully incriminating." Id. at 207; see also Bruton v. United States, 391 U.S. 123, 135 (1968) (prejudice from "powerfully incriminating extrajudicial statements of a codefendant" cannot be cured by jury instructions). Here, the statements that Evangelista cites to are not so "powerfully incriminating" as to fall within the "narrow exception." Liberatore never identified Evangelista by name, nor did he mention Gillette or offer other identifying details. The statement about having had a good run is ambiguous and open to interpretation, and also does not directly implicate Evangelista. See United States v. Vega Molina, 407 F.3d 511, 520 (1st Cir. 2005) ("A statement is powerfully incriminating only when

it is inculpatory on its face."). Accordingly, the possibility that these statements may be admitted at trial is not a basis for severance.

Second, Evangelista claims that his defense is likely to be antagonistic to Girardin and Liberatore's defenses. He states that his defense will be that he supplied only a small quantity of razor blades to Girardin and Liberatore in exchange for tickets to sporting events, and that Girardin and Liberatore had multiple sources from which they obtained razor blades. In contrast, Evangelista believes that Girardin and Liberatore will argue that Evangelista was their sole source of razor blades. Even if Evangelista is correct that these are the defenses that will be presented at trial, however, the differing versions of events would not be antagonistic in a way that requires severance. "Defenses are not antagonistic merely because they are not congruent. 'In order to gain a severance based on antagonistic defenses, the antagonism must be such that if the jury believes one defendant, it is *compelled* to convict the other defendant.'" United States v. Floyd, 740 F.3d 22, 36 (1st Cir. 2014) (quoting United States v. Peña–Lora, 225 F.3d 17, 33 (1st Cir. 2000)). In other words, "the tension between defenses must be so great that a jury would have to believe one defendant at the expense of the other." Id. (quoting Yefsky, 994 F.2d at 897). Here, if the jury believes that Evangelista was the sole supplier of the razor blades, it would not be compelled to convict him; nor would the jury necessarily have to convict Girardin and Liberatore if it determined that they obtained razor blades from additional sources. The number of razor blades supplied from particular sources is not determinative of the guilt or innocence of any of the defendants. Although the varying defenses offered at trial may not be congruent, they are not antagonistic, and thus, severance of Evangelista's trial is not required.

## III. CONCLUSION

Accordingly, defendants' motions to sever [ECF Nos. 56, 59, 60] are <u>DENIED</u>.

**SO ORDERED.**

May 25, 2017

<u>/s/ Allison D. Burroughs</u>
ALLISON D. BURROUGHS
U.S. DISTRICT JUDGE